```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                   MIDDLE DISTRICT OF PENNSYLVANIA


ANN M. IMPAGLIA,               :
                               :
          Plaintiff            :   No. 1:08-CV-540
                               :
     vs.                       :   (Complaint Filed 3/24/08)
                               :
MICHAEL J. ASTRUE,             :
COMMISSIONER OF SOCIAL         :   (Judge Muir)
SECURITY,                      :
                               :
          Defendant            :
```

**ORDER**
February 3, 2009

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Ann M. Impaglia's claim for social security supplemental security income benefits.

Supplemental security income (SSI) is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind and disabled individuals who have little or no income.

Impaglia, who was born on January 23, 1964, claims that she became disabled on May 1, 2004, because of hepatitis C, diabetes and asthma. Tr. 60, 68 and 73.[1] At the time of the onset of her alleged disability, Impaglia was not employed. Impaglia had worked in the laundry department of a hospital and as

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on September 11, 2008.

a delivery person for several automobile parts stores.  Tr. 74. Her last employment was in July of 1996. Tr. 24, 66 and 74.[2] Impaglia did not graduate from high school but attended school up through part of the 12th grade.  Tr. 23.

On January 23, 2006, Impaglia protectively filed an application for supplemental security income benefits. Tr. 9, 59 and 68.  After her claim was denied initially, a hearing was held on March 6, 2007, before an administrative law judge.  Tr. 17-36. On May 8, 2007, the administrative law judge issued a decision denying Impaglia's application for benefits. Tr. 9-16.  Impaglia filed a request for review of the decision with the Appeals Council of the Social Security Administration. Tr. 5.  On January 24, 2008, the Appeals Council concluded that there was no basis upon which to grant Impaglia's request for review. Tr. 1-3.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On March 24, 2008, Impaglia filed a complaint in this court requesting that we reverse the decision of the Commissioner denying her supplemental security income benefits.  The Clerk of Court assigned responsibility for this case to Judge Conner but referred it to Magistrate Judge Smyser for preliminary consideration.  By order of September 12, 2008, the case was reassigned to the undersigned judge for disposition.

---

2.  The administrative record reveals that for many years Impaglia was a heroin addict.

The Commissioner filed an answer to the complaint and a copy of the administrative record on September 11, 2008. On November 13, 2008, because Impaglia failed to file an appellate brief in accordance with the Local Rules of Court, we issued an order directing her to do so within 10 days. On November 21, 2008, Impaglia filed a 4-page brief[3] and on December 23, 2008, Defendant filed a 16-page brief. The appeal[4] became ripe for disposition on January 15, 2009, when Impaglia elected not to file a reply brief.

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must

---

3. Impaglia is represented by counsel and the brief was filed by her counsel.

4. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of

>       whether such work exists in the immediate area in which
>       he lives, or whether a specific job vacancy exists for
>       him, or whether he would be hired if he applied for
>       work.  For purposes of the preceding sentence (with
>       respect to any individual), "work which exists in the
>       national economy" means work which exists in significant
>       numbers either in the region where such individual
>       lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims.  See 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[5] (2) has an impairment that is severe or a combination of impairments that is severe,[6] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[7] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law

---

5.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

6.  If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled and the sequential evaluation proceeds no further.

7.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled.  If not, the sequential evaluation process proceeds to the next step.

judge must determine the claimant's residual functional capacity. Id.[8]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

In this case the administrative law judge at step one found that Impaglia had not engaged in substantial gainful activity since May 1, 2004, the alleged onset date of her disability. Tr. 11.

At step two, the administrative law judge found that Impaglia suffered from the following severe impairments: diabetes, hepatitis C, asthma and cellulitis. Tr. 11.

At step three, the administrative law judge found that Impaglia's impairments did not individually or in combination meet or equal a listed impairment. Tr. 11.

At step four, the administrative law judge, after considering all of Impaglia's medically determinable impairments,

―――――――――――

8. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

found that Impaglia has the residual functional capacity to perform the exertional demands of a full range of light work.[9] However, the administrative law judge found that Impaglia does not have the residual functional capacity to perform her past relevant work as an automobile parts delivery person and hospital laundry person which required unskilled and semi-skilled work tasks at the medium level of exertion.[10]

Contained within the Social Security regulations is a grid or table which lists Rules 202.01 through 202.22 in the left hand column. This grid or table is found at 20 C.F.R. pt. 404, subpt. P, app. 2. The Social Security regulations provide that "where the findings of fact made with respect to a particular

---

9. Light work is described at 20 C.F.R. § 404.9679(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

10. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.967(c).

individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Rule 200.00.  In the right hand column of the grid or table is set forth the "Decision" as to whether a claimant is "disabled" or "not disabled."   If all of the criteria of a particular Rule are met "[t]he existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules, i.e., in promulgating the rules, administrative notice has been taken of the numbers (sic) of unskilled jobs that exist throughout the national economy at the various functional levels. . . Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established." Rule 200.00(b).

In this case the administrative law judge made findings of fact which corresponded with all of the criteria of Rule 201.20.  The administrative law judge concluded that based on Impaglia's residual functional capacity, age,[11] her education and her past work, she was not disabled because she could perform a significant number of light jobs in the national economy pursuant to Rule 202.20 of the Medical-Vocational Guidelines (grid).  It is undisputed that if all the criteria of Rule 202.20 are met then an individual is not disabled.

---

11.  At the time of the hearing, Impaglia was 43 years old and classified as a younger individual. "The term younger individual is used to denote an individual age 18 through 49."  Rule 201(h)(1).

9

As noted earlier in this order Impaglia's counsel submitted a 4-page brief.  The argument section of that brief states in toto as follows:

> Plaintiff is disabled under section 1614(a)(3)(A) of the Social Security Act since she is unable to engage in substantial gainful activity by reason of her medically determined physical impairments that have continued for more than one year.
>
> The Administrative Law Judge performed the five-step sequential evaluation required to determine whether an individual is disabled, and worked through all steps finding that Plaintiff is not engaging in substantial gainful activity, has a severe medical impairment, does not have the residual functional capacity to perform past relevant work.  However, the ALJ found that Plaintiff was able to do light work.  This is contrary to Plaintiff's testimony that she is fatigued, and has difficult breathing and walking.  While she engages in some activities of daily living, she does them "slower" and is assisted by her adult daughter.  Further while she does light housework, she reports that the house is "a mess" (ALJ Decision Par 4, p.4).
>
> Finally, Defendant did not meet its burden of providing evidence that work exists that Plaintiff is able to perform given her residual functional capacity, age, and work experience.  See 20 CFR 416.916(g) and 416.960(c).
>
> Clearly Plaintiff has difficulty functioning and her medical impairments, diabetes, hepatitis, asthma, continues as evidenced by her hospitalization in April of 2007.

Doc. 12, Plaintiff's brief, pages 3-4.

We have thoroughly reviewed the record in this case and find no merit in the arguments of Impaglia.  Other than Impaglia's testimony there is no evidence that would suggest that she cannot perform the exertional demands of light work.  The administrative law judge had the discretion to discount Impaglia's testimony in

light of the absence of medical evidence supporting her claims of fatigue and exertional limitations. None of Impaglia's treating physicians have indicated that she is incapable of performing the exertional demands of light work.  Furthermore, a consultative physician, Oliver Finch, M.D., who reviewed the medical records for the Social Security Administration concluded that Impaglia had the capability of performing the exertional demands of medium work.  Tr. 205-210.

The administrative law judge reviewed all of the relevant evidence and giving Impaglia the benefit of the doubt concluded that Impaglia retains the capacity to perform light work.  While Impaglia has a documented history of hepatitis C, diabetes, asthma, and abscesses, physical examinations almost uniformly revealed no strength or neurological abnormalities. Impaglia routinely demonstrated full strength, intact sensation, normal reflexes, intact cranial nerves, and full range of motion in her joints.  Tr. 133, 136, 141, 162-63, 483, 490-91, 503-04, 513, 516-17 and 521.   Significantly, Impaglia's own treating physician, David Salko, M.D., recommended that she exercise 40 to 60 minutes per day.  Tr. 491 and 527.

While Impaglia had impairments which could reasonably be expected to produce some of her symptoms, the administrative law judge reasonably concluded that Impaglia's testimony regarding the intensity, persistence and limiting effects of her impairments was not entirely credible.  As noted by the administrative law judge,

treatment notes during the relevant time period consistently revealed that Impaglia's symptoms were well-controlled with medications and that her condition remained stable because of her excellent well-coordinated medical care.  Tr. 13, 14, 133, 136, 141, 157, 159, 162-163, 483, 490-491, 503-504, 513, 516-517 and 521.  Once Impaglia began treatment for her hepatitis C, Impaglia indicated she was eating well, she had not lost weight, and she could perform her activities of daily living without pain. Tr. 133.[12]

With respect to Impaglia's asthma, Impaglia only intermittently used her inhalers.  Tr. 141.  Furthermore, at numerous office visits with Dr. Salko, Impaglia's blood oxygen saturation was excellent ranging from 94% to 100% on room air.[13] Tr. 133, 141, 158-160, 162-163 and 530.  Significantly, Impaglia's oxygen saturation remained high despite the fact that she

---

12. Impaglia is 5'2" tall and at the time of the hearing weighed 125 pounds.  Tr. 12.

13. Oxygen saturation refers to the percentage of hemoglobin binding sites in the bloodstream occupied by oxygen.  "Your red blood cells must carry sufficient oxygen through your arteries to all of your internal organs to keep you alive. Normally, when red blood cells pass through the lungs, 95%-100% of them are loaded, or 'saturated,' with oxygen to carry.  If you have lung disease or other types of medical conditions, fewer of your red blood cells may be carrying their usual load of oxygen, and your oxygen saturation might be lower than 95%." http://www.health.harvard.edu/diagnostic-tests/oxygen-saturation-test.htm. Our review of the medical records reveals only one appointment where Impaglia's oxygen saturation was below 95%.  At an appointment on August 16, 2005, her oxygen saturation was 94%.  However, an examination of her lungs revealed "[n]ormal breath sounds and expansion without cough, dyspnea or sputum."  Tr. 159.

continued to smoke against her physicians' repeated advice. Tr. 141, 158-160, 453, 455-456 and 459.

Because Impaglia could perform a full range of light work, the administrative law judge did not err in concluding that she was not disabled under the Medical-Vocational Guidelines set forth in Appendix 2 to Subpart P of Part 404 of the Social Security regulations.[14]

Our review of the administrative record reveals that the decision of the administrative law judge is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner of Social Security denying Impaglia social security supplemental security income benefits.

NOW, THEREFORE, IT IS ORDERED THAT:

1.  The Clerk of Court shall enter judgment in favor of the Commissioner and against Ann M. Impaglia as set forth in the following paragraph.

2.  The decision of the Commissioner of Social Security denying Ann M. Impaglia social security supplement security income benefits is affirmed.

---

14. There was one minor error committed by the administrative law judge which does not impact our decision. The administrative law judge utilized Rule 202.20 which relates to high school graduates. Although Impaglia attended the 12th grade, she did not graduate from high school. The administrative law judge should have cited Rule 202.17 which relates to those individuals who are at least literate and able to communicate in English. Under Rule 202.17 Impaglia was also not disabled.

      3.    The Clerk of Court shall close this case.

              <u>s/Malcolm Muir</u>
              MUIR
              United States District Judge

MM:gs